IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| JOHNSON & JOHNSON and JANSSEN BIOTECH, INC.,<br><br>Petitioners,<br><br>v.<br><br>EXPRESS SCRIPTS, INC.<br><br>Respondent. | Case No. _____ |

**OPENING BRIEF IN SUPPORT OF JOHNSON & JOHNSON
AND JANSSEN BIOTECH, INC.'S MOTION TO COMPEL
PRODUCTION OF DOCUMENTS RESPONSIVE TO SUBPOENA**

Dated: May 30, 2025

Christina Guerola Sarchio
Victoria King
DECHERT LLP
1900 K Street, NW
Washington, D.C. 20006
Tel.: (202) 261-3300
Fax: (202) 261-3333
christina.sarchio@dechert.com

Julia Chapman
DECHERT LLP
Cira Centre
2929 Arch Street
Philadelphia, PA 19104
Tel: (215) 994-2060
Fax: (215) 994-2222

Rebecca L. Butcher (#3816)
Jennifer L. Cree (#5919)
LANDIS RATH & COBB LLP
919 Market Street, Suite 1800
Wilmington, DE 19801
Tel.: (302) 467-4400
butcher@lrclaw.com
cree@lrclaw.com

# TABLE OF CONTENTS

Page

SUMMARY OF ARGUMENT ................................................................................................. 1

NATURE AND STAGE OF PROCEEDINGS ............................................................................ 2

I.      LEGAL STANDARD................................................................................................. 6

ARGUMENT.................................................................................................................................. 8

I.      J&J's Motion to Compel Should be Transferred to the Eastern District of Virginia. ............................................................................................................................ 8

II.     Express Scripts Should Be Compelled To Comply With J&J's November 15, 2024 and January 16, 2025 Subpoenas. ............................................................................ 10

RULE 7.1.1 CERTIFICATE....................................................................................................... 13

CONCLUSION............................................................................................................................ 14

# TABLE OF AUTHORITIES

Page

**Cases**

*AbbVie Inc. v. Boehringer Ingelheim Int'l GmbH,*
  2018 WL 2337133 (D. Del. May 23, 2018) ............................................................. 12

*Brown v. Meehan,*
  2014 WL 4701170 (E.D. Va. Sept. 22, 2014) ........................................................... 7

*Carefirst of Md., Inc. v. Carefirst Pregnancy Ctrs., Inc.,*
  334 F.3d 390 (4th Cir. 2003) ................................................................................... 10

*Carter Hughes v. Rsch. Triangle Inst.,*
  2014 WL 4384078 (M.D.N.C. Sept. 3, 2014) ........................................................... 7

*Castle v. Jallah,*
  142 F.R.D. 618 (E.D. Va. 1992) .............................................................................. 7

*In re Daimler Truck North Am., LLC,*
  2023 WL 2456069 (D. Del. March 10, 2023) ....................................................... 8, 9

*In re Intel Corp. Microprocessor Antitrust Litig.,*
  562 F. Supp. 2d 606 (D. Del. 2008) ......................................................................... 7

*In re MiMedx Grp. Sec. Litig.,*
  2015 WL 5445140 (D. Del. July 17, 2015) .......................................................... 7, 10

*In re Niaspan Antitrust Litig.,*
  2015 WL 3407543 (D. Md. May 26, 2015) .............................................................. 9

*In re TQ Delta,*
  2018 WL 5033756 (D. Del. Oct. 17, 2018) ............................................................ 12

*In re Twitter Inc.,*
  2020 WL 912751 (W.D. Va. Feb. 25, 2020) ............................................................ 9

*Mannington Mills, Inc. v. Armstrong World Indus., Inc.,*
  206 F.R.D. 525 (D. Del. 2002) ............................................................................... 11

*North Atlantic Operating Co., Inc. v. Dunhuang Group,*
  2018 WL 3381300 (D. Del. July 11, 2018) .......................................................... 8, 9

*Oppenheimer Fund Inc. v. Sanders,*
  437 U.S. 340 (1978) ............................................................................................ 7, 10

*Peninsula Pathology Assocs. v. Am. Int'l Indus.*,
   2022 WL 19574484 (E.D. Va. Dec. 23, 2022) ............................................................................ 12

*People for Ethical Treatment of Animals, Inc. v. Vital Farms, Inc.*,
   2023 WL 2933303 (E.D. Va. Apr. 13, 2023) .............................................................................. 12

*SonoMedica, Inc. v. Mohler*,
   2009 WL 2371507 (E.D. Va. July 28, 2009) ................................................................................ 8

*Spendlove v. RapidCourt, LLC*,
   2019 WL 7143664 (E.D. Va. Dec. 23, 2019) ................................................................................ 7

*Syngenta Crop Prot., LLC v. Willowood, LLC*,
   2016 WL 4925099 (D. Del. Sept. 14, 2016) ............................................................................... 11

*Verisign, Inc. v. XYZ.com, LLC*,
   2015 WL 7960976 (D. Del. Dec. 4, 2015) .................................................................................... 7

**Rules**

Fed. R. Civ. P. 26 ............................................................................................................... 6, 7, 10

Fed. R. Civ. P. 45 ...................................................................................................................... 7, 8

**Other Authorities**

*Optum's Nuvaila Is Sole Distributor of First Stelara Biosimilar, Wezlana*, AISHealth (Jan. 9,
   2025), https://aishealth.mmitnetwork.com/blogs/radar-on-specialty-pharmacy/optum-s-
   nuvaila-is-sole-distributor-of-first-stelara-biosimilar-wezlana (accessed on May 29, 2025) ..... 5

Pursuant to Federal Rules of Civil Procedure 37 and 45, Johnson & Johnson and Janssen Biotech, Inc. (together, "J&J") respectfully submit this memorandum of law in support of its motion to compel non-party Express Scripts, Inc. ("Express Scripts") to produce information and documents in accordance with J&J's November 15, 2024 subpoena, Ex. C, Notice of Subpoena, as well as its January 16, 2025 subpoena, Ex. D, Notice of Subpoena, (together, "J&J's Subpoenas"). J&J's Subpoenas contain tailored requests for documents relevant to a lawsuit pending in the United States District Court for the Eastern District of Virginia entitled *Carefirst of Maryland, Inc. et al. v. Johnson & Johnson et al.*, Civil Action No. 2:23-cv-00629-JKW (E.D. Va.) (the "EDVA Action"). Express Scripts has made only one initial production responsive to the November, 15, 2024 subpoena. Despite J&J's frequent requests for production status updates and efforts to provide Express Scripts with its requested information to complete its production, Express Scripts has not produced any additional documents responsive to either of J&J's Subpoenas.

Now several months following the close of fact discovery and approaching expert report and class certification briefing deadlines, J&J has been left with no choice but to seek an order requiring Express Scripts to comply with the parameters set forth in J&J's subpoenas. In addition, J&J seeks an order transferring this motion from this Court to the Eastern District of Virginia, pursuant to Federal Rule of Civil Procedure 45(f).

## SUMMARY OF ARGUMENT

Express Scripts has failed to provide documents responsive to J&J's Subpoenas. Accordingly, J&J seeks an order requiring Express Scripts to comply with the parameters set forth in J&J's subpoenas.

1

The Subpoenas served by J&J designates Wilmington, Delaware (Express Scripts' place of incorporation) as the place of compliance, making this Court the proper venue for the instant motion. However, pursuant to Federal Rule of Civil Procedure 45(f), the Court may find it appropriate to transfer this motion to the Eastern District of Virginia so that it can be decided by the same judge that is handling all other discovery disputes in the EDVA Action. Should this Court retain jurisdiction over the instant motion, J&J respectfully requests that the Court rule in favor of J&J and compel Express Scripts to comply with the subpoenas in the EDVA Action. J&J seeks documents that are relevant to the underlying claims and defenses in the EDVA Action, proportional to the needs of the case, and narrowly tailored to minimize the burden of production on Express Scripts.

## NATURE AND STAGE OF PROCEEDINGS

On December 7, 2023, plaintiffs CareFirst of Maryland, Inc. et al. filed a class action suit in the U.S. District Court for the Eastern District of Virginia alleging violations of the antitrust laws claiming that J&J's enforcement of lawfully issued and acquired patents was an effort to monopolize a market for its biologic drug ustekinumab, sold under the brand name Stelara. *Carefirst of Maryland, Inc. et al. v. Johnson & Johnson et al.*, No. 2:23-cv-00629-JKW, D.I. 184 (E.D. Va. Nov. 13, 2024) (Second Am. Compl.). Plaintiffs' challenge J&J's conduct between 2019 and 2023, claiming that J&J violated Section 2 of the Sherman Act (15 U.S.C. § 2) when: (1) counsel to J&J allegedly committed fraud on the PTO in the prosecution of the ulcerative colitis method-of-use patent application when its '307 UC Patent issued, *id.* ¶¶ 140-152; (2) J&J allegedly improperly acquired certain biosimilar manufacturing patents ("Momenta Patents") through its acquisition of Momenta Pharmaceuticals, *id.* at ¶162; and (3) J&J allegedly improperly enforced the '307 UC Patent and Momenta Patents, *id.* ¶ 183, by entering into settlement licenses that

2

resolved the disputes regarding those patents by permitting biosimilar entry beginning in January 2025, *id.* ¶ 8. As a result, Plaintiffs' claim that J&J's anticompetitive conduct and alleged monopolization of the ustekinumab market delayed entry of biosimilar manufacturers from entering the market and thus resulted in class members: (1) being denied the opportunity to purchase lower-priced Stelara from J&J; (2) paying higher prices for ustekinumab than they would have paid absent the illegal conduct; and (3) being denied the opportunity to purchase biosimilar ustekinumab at a substantially lower prices. *Id.* at ¶¶ 91-96.

In July 2024, J&J served document subpoenas on various third-party pharmacy benefit managers ("PBMs"), including Evernorth Health, Inc. ("Evernorth")—Express Scripts is a pharmacy benefit management (PBM) company that operates under Evernorth, and both entities are under parent company Cigna Corporation—seeking documents relevant to the EDVA Action, Plaintiffs' claims, and J&J's defenses. Specifically, J&J's subpoena served on Evernorth on July 29, 2024 seeks: (1) documents and/or data that reflect Evernorth's transactional prescription reimbursement data; (2) documents and/or data discussing how Evernorth's rebates/discounts are split and disbursed with health plans and related transactional rebate/discount payment data; (3) documents and/or data explaining Evernorth's formularies and tier placements, quantity limits, and mandatory generic substitutions; and (4) related internal discussions regarding J&J's Stelara and therapeutic class review. *See* J&J's July 29, 2024 Subpoena *Duces Tecum* directed to Evernorth Health, Inc., a true and correct copy of which is attached hereto as Exhibit A. Given Plaintiffs' claims that J&J engaged in anticompetitive conduct to prevent lower priced biosimilars from entering the drug market, J&J requested documents on these subjects are essential to J&J's defenses regarding the prices that class members paid for Stelara during the relevant time period and the effect of biosimilar entry on the overall price of ustekinumab.

During a meet and confer, counsel that responded to J&J's July 2024 subpoena to Evernorth informed J&J that Evernorth was not the proper entity to receive the subpoena and produce the requested documents and information. *See* Email thread between J&J counsel and Express Scripts, Inc. counsel from September 9, 2024 through May 19, 2025, a true and correct copy of which is attached hereto as Exhibit B. Nevertheless, counsel engaged with J&J regarding the substance of J&J's July 2024 Subpoena. *See id.* During this correspondence, J&J provided counsel with a list of 11-digit NDC codes to search for Stelara products in their data pull in response to J&J's July 2024 Subpoena. *Id.* at Victoria King, Esq. Nov. 4, 2024 email. Counsel also requested client codes for the named plaintiffs in the EDVA action. *Id.* at Tanya Maerz, Esq. Nov. 6, 2024 email.

Per counsel's clarifications, J&J served a revised subpoena directed to Express Scripts on November 15, 2024, and counsel accepted service. *See id.* at Victoria King, Esq. Nov. 15, 2024 email and Tanya Maerz, Esq. Nov. 22, 2024 email; *see also* November 15, 2024 Subpoena *Duces Tecum* from J&J directed to Express Scripts, Inc. a true and correct copy of which is attached hereto as Exhibit C.

On November 25, 2024, Express Scripts made a production containing one redacted document in response to J&J's November 15, 2024 subpoena. Shortly after, in December 2024, J&J followed up regarding Express Script's next production concerning the requested Stelara transactional and claims data. J&J then continually asked for status updates regarding the next production from Express Scripts. *See* Ex. B (requesting date of next Express Script production on December 10, December 19, January 6, January 13, January 21, February 19, and March 10).

On January 16, 2025, J&J served additional document subpoenas on PBMs, including Express Scripts, seeking documents relevant to the PBMs and their subsidiaries or affiliate

4

companies' agreements with biosimilar manufacturers regarding private label or co-branded biologic products for which Stelara or ustekinumab is the reference product ("Biosimilar Stelara"). *See* January 16, 2025 Subpoena *Duces Tecum* from J&J directed to Express Scripts, Inc. a true and correct copy of which is attached hereto as Ex. D. J&J's January 16, 2025 subpoena request stemmed from early January public announcements that a private-label subsidiary of a PBM would be the sole distributor of the first and only currently available Stelara biosimilar.[1] The entrants of Stelara biosimilars and their impact on the market are directly relevant to Plaintiffs' claims that J&J's conduct prevented the entry of Stelara biosimilar products and thus caused Plaintiffs to pay higher prices for Stelara.

Following Service of its January 16, 2025 subpoena, J&J met and conferred with counsel on January 29, 2025. *See* Ex. B at Tanya Maerz, Esq. Jan. 31, 2025 email. During the meet and confer, Express Scripts' counsel reported that Express Scripts was unable to confirm the EDVA Action plaintiffs' identification in their data with the client codes provided by J&J. *Id.* J&J offered to confirm this information with plaintiffs' counsel. *Id.* Following discussion with plaintiffs' counsel, J&J provided that they had no additional client code information that they could provide from plaintiffs. *Id.* at Madeline Holler, Esq. Feb. 10, 2025 email. J&J continued to follow up with Express Scripts' counsel throughout February, March, and the start of April regarding the status of another production. *See id.*

On April 7, 2025, Express Scripts' counsel provided that their query using the plaintiffs' client code information did not yield any claims data results. *Id.* J&J replied that, notwithstanding Plaintiff's provided client codes, Express Scripts should provide claims data results using the 11-

---

[1] *See Optum's Nuvaila Is Sole Distributor of First Stelara Biosimilar, Wezlana*, AISHealth (Jan. 9, 2025), https://aishealth.mmitnetwork.com/blogs/radar-on-specialty-pharmacy/optum-s-nuvaila-is-sole-distributor-of-first-stelara-biosimilar-wezlana (accessed on May 29, 2025).

5

digit Stelara NDC codes that J&J had previously provided (in November). *Id.* Express Scripts counsel informed J&J that they would not produce any claims data unless J&J again attempted to provide revised identifying information for named Plaintiffs.

The scheduling order in the EDVA Action determined that fact discovery closed on February 10, 2025. *Carefirst of Maryland, Inc. et al. v. Johnson & Johnson et al.*, No. 2:23-cv-00629-JKW, D.I. 182 (E.D. Va. Nov. 13, 2024) (Amended Scheduling Order). Following fact discovery, the parties in the EDVA action have been working through expert reports and preparation for class certification deadlines, among others. Plaintiffs in the EDVA Action submitted opening expert reports, as well as motions for class certification and opening class/damages reports on February 24, 2025, and April 30, 2025, respectively. *Id.* According to the scheduling order and applicable extensions, J&J submitted expert reports on May 5, 2025. *Id.*; *see also Carefirst of Maryland, Inc. et al. v. Johnson & Johnson et al.*, No. 2:23-cv-00629-JKW, D.I. 332 (E.D. Va. Apr. 28, 2025) (granting extension of deadlines concerning merits expert reports). J&J's opposition to plaintiffs' motion for class certification and corresponding class/damages reports shall be served by June 25, 2025. *Carefirst of Maryland, Inc. et al. v. Johnson & Johnson et al.*, No. 2:23-cv-00629-JKW, D.I. 182 (E.D. Va. Nov. 13, 2024).

Because of Express Scripts' refusal to comply with J&J's properly served subpoenas and in light of additional case deadlines, Express Scripts has left J&J with no choice but to seek the Court's intervention.

I. **LEGAL STANDARD**

It is well-settled that "[t]he purpose of discovery is to provide a mechanism for making relevant information available to the litigants." Fed. R. Civ. P. 26 advisory committee's note to 1983 amendment. Under the Federal Rules of Civil Procedure, "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional

6

to the needs of the case." Fed. R. Civ. P. 26(b)(1). "Relevance is broadly construed to include'[a]ny matter that bears on, or that reasonably could lead to other matter[s] that could bear on, any issue that is or may be in the case.'" *Spendlove v. RapidCourt, LLC,* 2019 WL 7143664, at *4 (E.D. Va. Dec. 23, 2019) (citing *Oppenheimer Fund Inc. v. Sanders*, 437 U.S. 340, 357 (1978)); *In re MiMedx Grp. Sec. Litig.*, 2015 WL 5445140, at *4 (D. Del. July 17, 2015) (same). Moreover, the party opposing discovery bears the burden in a discovery dispute. *See Carter Hughes v. Rsch. Triangle Inst.,* 2014 WL 4384078, at *2 (M.D.N.C. Sept. 3, 2014) (observing that "district judges and magistrate judges in the Fourth Circuit . . . have repeatedly ruled that the party or person resisting discovery, not the party moving to compel discovery, bears the burden of persuasion").

A "non-party witness is subject to the same scope of discovery … as that person would be as a party." Fed. R. Civ. P. 45, Advisory Committee's Note to 1991 Amendment. *See also Brown v. Meehan,* 2014 WL 4701170, at *2 (E.D. Va. Sept. 22, 2014) ("Rule 45 governs subpoenas to nonparties and permits the same scope of discovery as Rule 26."); *Castle v. Jallah,* 142 F.R.D. 618, 620 (E.D. Va. 1992); *Verisign, Inc. v. XYZ.com, LLC,* 2015 WL 7960976, at *1 (D. Del. Dec. 4, 2015) ("[T]he permissible scope of discovery … also applies to a Rule 45 subpoena."). As a result, it is improper for a third party to engage in "conduct resulting in a waste of time and increased financial costs associated with discovery of its information" by delaying its responses to a subpoena. *In re Intel Corp. Microprocessor Antitrust Litig.,* 562 F. Supp. 2d 606, 617 (D. Del. 2008).

Should a third party refuse to comply with a proper subpoena, the proper remedy for the party issuing the subpoena is to move to compel. *See* Fed. R. Civ. P. 45(d)(2)(B)(i) ("[T]he serving party may move the court for the district where compliance is required for an order compelling

production or inspection."); *see also SonoMedica, Inc. v. Mohler,* 2009 WL 2371507, at *9 (E.D. Va. July 28, 2009).

## ARGUMENT

I. **J&J'S MOTION TO COMPEL SHOULD BE TRANSFERRED TO THE EASTERN DISTRICT OF VIRGINIA.**

Pursuant to Rule 45, motions to enforce non-party subpoenas must be filed in the district where compliance is required. However, Rule 45(f) allows a court to transfer the case for extraordinary circumstances. *In re Daimler Truck North Am., LLC,* 2023 WL 2456069, at *2 (D. Del. March 10, 2023) (noting that "transfer would avoid interference with the time sensitive discovery schedule in the Patent Case"). For the reasons stated below, extraordinary circumstances support the transfer of the instant motion to the Eastern District of Virginia.

First, transferring the instant motion will promote judicial efficiency by allowing the presiding magistrate judge in the Eastern District of Virginia to continue to resolve discovery issues in this case. With fact discovery closed as of February 10, 2025, and upcoming case deadlines concerning experts and class certification briefing, Express Scripts' failure to make any effort to produce any additional documents in compliance with J&J's Subpoenas threatens to interfere with the parties' expedited discovery schedule and overall case management. *See North Atlantic Operating Co., Inc. v. Dunhuang Group,* 2018 WL 3381300, at *2 (D. Del. July 11, 2018) ("The Court finds that extraordinary circumstances exist in this case, such that transfer is warranted so as to not disrupt the issuing court's management of the Underlying Action … including of the information requested by the subpoena *duces tecum.* Accordingly, resolution of Petitioners' motion is time-sensitive, a factor supporting transfer.").

Second, transferring the motion will "promote judicial economy and avoid the risk of inconsistent rulings." *North Atlantic,* 2018 WL 3381300 at *2; *see Daimler Truck,* 2023 WL

8

2456069, at *2 ("Transfer is likewise appropriate because the issuing court has greater involvement and more familiarity with the underlying patent litigation such that transfer back to that court promotes judicial economy."). Given the Eastern District of Virginia's familiarity with the underlying claims and scope of permissible discovery, transferring this motion will be the most efficient method to decide the underlying merits of J&J's motion to compel on an accelerated schedule. In addition, the need for consistency is heightened where, as here, a significant number of subpoenas to third parties have been served and the issues raised are likely to reoccur. *In re Niaspan Antitrust Litig.*, 2015 WL 3407543, at *1 (D. Md. May 26, 2015) (ordering transfer where issuing court has already issued subpoenas to entities in other states, and the issues raised in the motion to quash "are likely to arise in these other districts"); *In re Twitter Inc.*, 2020 WL 912751, at *2 (W.D. Va. Feb. 25, 2020) (ordering transfer to the Eastern District of Virginia due to the risk of inconsistent rulings).

Finally, transferring the motion will not create any undue burden on Express Scripts. Counsel representing Express Scripts, Husch Blackwell, is a national law firm with more than twenty offices across the United States, including a location in Washington, D.C. but not in Wilmington, Delaware. This renders any argument regarding the cost of travel to be insincere. In addition, the Eastern District of Virginia has allowed the parties to participate in telephonic and/or video conference hearings, which may eliminate any potential risk that transferring the motion would be burdensome to Express Scripts. "[E]nforcement of the subpoena, if granted, would impose no greater burden on [Express Scripts.] if issued by this Court or by the Eastern District of Virginia." *North Atlantic*, 2018 WL 3381300 at *2. Together, these compelling reasons provide extraordinary circumstances for this motion to be transferred to the Eastern District of Virginia

where it may be decided by the same Magistrate Judge who has resolved the parties' discovery disputes in the EDVA Action.

II.  **EXPRESS SCRIPTS SHOULD BE COMPELLED TO COMPLY WITH J&J'S NOVEMBER 15, 2024 AND JANUARY 16, 2025 SUBPOENAS.**

Under the Federal Rules of Civil Procedure, discovery is "broad in scope and freely permitted." *Carefirst of Md., Inc. v. Carefirst Pregnancy Ctrs., Inc.,* 334 F.3d 390, 402 (4th Cir. 2003); *see also In re MiMedx Grp. Sec. Litig.,* 2015 WL 5445140, at *2 (D. Del. July 17, 2015) ("The Third Circuit has noted that '[i]t is well recognized that the federal rules allow broad and liberal discovery.'"). Information is discoverable if it is "relevant to any party's claim or defense," Fed. R. Civ. P. 26(b)(1), and the rule is broadly construed to encompass "any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case." *Oppenheimer Fund, Inc. v. Sanders,* 437 U.S. 340, 351 (1978).

Here, J&J issued and served a valid and enforceable subpoena on Express Scripts seeking documents that are highly relevant to the claims and defenses in the EDVA Action. In particular, J&J's November 15, 2024 subpoena seeks the production of non-privileged information related to the total pharmacy payments Express Scripts paid for customers with certain prescription drug plans to receive Stelara and related rebate/discount payment information. *See* Ex. C. This information is plainly relevant to Plaintiffs' repeated allegations that because of "J&J's unlawful acts, purchasers of ustekinumab in the United States have paid, and continue to pay, supra-competitive prices for ustekinumab." *Carefirst of Maryland, Inc. et al. v. Johnson & Johnson et al.*, No. 2:23-cv-00629-JKW, D.I. 184 ¶11 (E.D. Va. Nov. 13, 2024). J&J's January 16, 2025 subpoena seeks the production of non-privileged information relating to any agreements Express Scripts has concerning private label or unbranded versions of a Stelara biosimilar. *See* Ex. D. This information concerning biosimilar Stelara products is plainly relevant to Plaintiffs' allegations that

10

J&J's conduct has delayed biosimilar Stelara entrants to the market and that biosimilar entrants would have driven down Stelara's price. This information also concerns transactional data relevant to class certification. Accordingly, the information sought from Express Scripts is the proper subject of discovery and the subpoena clearly meets the standard of relevancy as set forth in Rules 26 and 25.

In addition, J&J is entitled to the entry of an order directing Express Scripts to comply with the production of documents as outlined by the subpoenas given the valid and enforceable nature of J&J's properly issued and served subpoena. Rule 45(a)(1)-(4)'s requirements for form and contents, issuance, and notice were sufficiently met, and Express Scripts has not objected to such. *See* January 29, 2025 Express Scripts Objections to January 16, 2025 Subpoena, a true and correct copy of which is attached hereto as Exhibit E. Express Scripts' counsel accepted service of the November 15, 2024 subpoena via email, *see* Ex. B at Tanya Maerz, Esq. Nov. 22, 2024 email, and the January 16, 2025 subpoena was served on Express Scripts' registered agent via a process server and all requirements for proper service under the rule have been satisfied as evidence by the Affidavit of Service, dated January 16, 2025. Ex. D.

To the extent that Express Scripts contends that the production of documents responsive to the subpoena would be unduly burdensome, its arguments are without merit. In addition to weighing the relevance of any requested information, when evaluating whether to compel production the Court must weigh the requesting party's need for the requested material in addition to any potential harm caused by compliance. *Mannington Mills, Inc. v. Armstrong World Indus., Inc.,* 206 F.R.D. 525, 529 (D. Del. 2002). While a non-party is not expected to engage in overly burdensome discovery, courts must consider "whether the burden or expense of the proposed discovery outweighs its likely benefit." *Syngenta Crop Prot., LLC v. Willowood, LLC,* 2016 WL

11

4925099, at *2 (D. Del. Sept. 14, 2016); *see also Peninsula Pathology Assocs. v. Am. Int'l Indus.,* 2022 WL 19574484, at *2 (E.D. Va. Dec. 23, 2022). Generally, undue burden is not a mere function of time or the expense of responding to a subpoena but is assessed by considering "the requesting party's need for the documents" in addition to "the breadth of the request, the time period covered, the particularity with which the documents are described, and the burden imposed in responding." *In re TQ Delta,* 2018 WL 5033756, at *2 (D. Del. Oct. 17, 2018); *see also People for Ethical Treatment of Animals, Inc. v. Vital Farms, Inc.,* 2023 WL 2933303, at *8 (E.D. Va. Apr. 13, 2023) (same).

As explained above, the information that J&J seeks is centrally relevant to plaintiffs' damages claims, for instance, the question of whether plaintiffs, have in fact, been injured by J&J's alleged overcharging for Stelara in the EDVA Action, as well as topics relevant to class certification. Moreover, the documents J&J seeks from Express Scripts are not available from any other source, making the benefit to J&J in obtaining the requested documents even more pressing. *AbbVie Inc. v. Boehringer Ingelheim Int'l GmbH,* 2018 WL 2337133, at *2 (D. Del. May 23, 2018) (explaining that information sought in discovery is viewed as particularly beneficial where it "is uniquely available from the party from whom it is sought."); *see also Peninsula Pathology Assocs. v. Am. Int'l Indus.,* 2022 WL 19574484, at *2 (E.D. Va. Dec. 23, 2022) (discovery has significant benefit if the requesting party "cannot obtain the same information, or comparable information that would also satisfy its needs, from one of the parties to the litigation"). Indeed, for these reasons, several non-party PBMs have produced responsive documents and/or data responsive to J&J's Subpoenas in this matter.

In contrast, any burden that may be placed on Express Scripts in responding to the subpoena is manageable. J&J's requests seek information from Express Scripts that is narrow and relate to

a highly relevant time period. Like with the other non-party PBMs who were subpoenaed, J&J has taken reasonable steps to limit the nature of its requests and remain amenable to negotiating the terms of its requests so that it receives specific and targeted information that is relevant to the EDVA Action.

As a result, there is no evidence that Express Scripts will be harmed or unduly burdened by an order requiring it to comply with the terms of J&J's subpoenas. Because there is no indication that Express Scripts is incapable of responding to the subpoena, this Court should weigh each of the factors above in favor of enforcing J&J's subpoena and compelling Express Scripts to comply in good faith with J&J's documents request.

## RULE 7.1.1 CERTIFICATE

As set forth in the lengthy email exchange at Exhibit B, counsel hereby certifies that, pursuant to Rule 7.1.1 of the Local Rules of Civil Practice and Procedure of the United States District Court for the District of Delaware that counsel for J&J and counsel for Express Scripts met and conferred multiple times on the subpoenas in question and have not been able to reach agreement regarding the matters addressed in J&J's Motion.

## CONCLUSION

For the reasons stated above, J&J respectfully requests that the Court transfer this motion to the Eastern District of Virginia to be heard by the Magistrate Judge handling all discovery disputes in *Carefirst of Maryland, Inc. et al. v. Johnson & Johnson et al.*, Civil Action No. 2:23-cv-00629-JKW (Ed. Va.). In the alternative, should the Court retain its authority to render a decision on the merits of this motion, J&J's motion to compel the production of all information requested by its subpoenas before the close of fact discovery in the EDVA Action should be granted.

Dated: May 30, 2025

Christina Guerola Sarchio
Victoria King
DECHERT LLP
1900 K Street, NW
Washington, D.C. 20006
Tel.: (202) 261-3300
Fax: (202) 261-3333
christina.sarchio@dechert.com

Julia Chapman
DECHERT LLP
Cira Centre
2929 Arch Street
Philadelphia, PA 19104
Tel: (215) 994-2060
Fax: (215) 994-2222

Respectfully submitted,

*/s/ Rebecca L. Butcher*
Rebecca L. Butcher (#3816)
Jennifer L. Cree (#5919)
LANDIS RATH & COBB LLP
919 Market Street, Suite 1800
Wilmington, DE 19801
Tel.: (302) 467-4400
butcher@lrclaw.com
cree@lrclaw.com

*Counsel for Johnson & Johnson and Janssen Biotech, Inc.*